UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIONA CURRIE and ANDREW CURRIE,

                   Plaintiffs,

  -against-

UNITED STATES OF AMERICA,

                   Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/14/2024

No. 23-cv-3519 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiffs Fiona Currie ("Ms. Currie") and Andrew Currie (Mr. Currie") (together, Plaintiffs) bring this action against Defendant the United States of America (the "United States" or "Government"), pursuant to the Federal Tort Claims Act ("FTCA"), for claims arising out of the alleged failure of Dr. Dominique Delma, M.D. of the Institute for Family Care (the "Institute") to timely diagnose and treat an ectopic pregnancy. Presently before the Court is Defendant's partial motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 23.) For the following reasons, Defendant's partial motion to dismiss is granted.

## FACTUAL BACKGROUND

    The following facts are taken from Plaintiffs' Amended Complaint ("AC," ECF No. 11) and are accepted as true for the purposes of this motion.[1] The facts are generally not in dispute.

    On October 12, 2021, Ms. Currie began receiving prenatal care from Dr. Delma and the Institute. (AC ¶11.) On October 15, 2021, Ms. Currie began to bleed heavily. (*Id.* ¶ 13.) On October 18, 2021, Plaintiff raised her concern with the Institute that she was experiencing a miscarriage.

---

[1] References to "Def. Ex." refer to the exhibits attached to the Declaration of Frances M. Recio submitted in support of Defendant's motion to dismiss. ("Recio Decl.," ECF No. 25.)

1

(*Id.* ¶ 14.) On October 26, 2021, after several calls to the office, Ms. Currie was informed that Dr. Delma wanted her to have an ultrasound. (*Id.* ¶ 16.) On November 1, 2021, the ultrasound was performed at a local hospital. (*Id.* ¶ 17.) On November 5, 2021, the ultrasound report was uploaded to the patient portal and Ms. Currie was informed that Dr. Delma would be on vacation for two weeks. (*Id.* ¶ 18.) Plaintiff then had an appointment scheduled for November 11, 2021 with Dr. Barnes, a different practitioner at the Institute. (*Id.* ¶ 19.) At that appointment, Dr. Barnes diagnosed Ms. Currie with an ectopic pregnancy, had another ultrasound performed, and prescribed her with methotrexate. (*Id.*) Dr. Barnes asked Ms. Currie why the ectopic pregnancy was not discovered sooner. (*Id.*) On November 14, 2021, Ms. Currie developed abdominal pain and presyncope. (*Id.* ¶ 20.) On November 16, 2021, Ms. Currie fainted and, upon revival, contacted Dr. Barnes, who directed her to report to a local emergency room. (*Id.* ¶ 21.) On November 17, 2021, Dr. Barnes performed a laparotomy, left partial salpingectomy, and removal of a large right adnexal cyst. (*Id.* ¶ 22.) A large ruptured ectopic pregnancy was found during Ms. Currie's operation. (*Id.*)

As a result of the alleged failure of Dr. Delma to diagnose Ms. Currie's ectopic pregnancy, Plaintiffs filed an administrative tort claim under the FTCA. On or about August 8, 2022, Plaintiffs served a Standard Form 95 ("SF-95") on the United States Department of Health and Human Services ("HHS"). (*Id.* ¶ 6) In their initial SF-95, Plaintiffs wrote in Box 8, Basis of Claim: "Failure to diagnose and treat etopic (*sic*) pregnancy. Inability to have natural birth with spouse; loss of services." (Def. Ex. 1.) Plaintiffs left blank Box 10, which asked for a description of the nature and extent the injury. (*Id.*) On November 11, 2022, Plaintiffs served HHS a supplemental SF-95. (*Id*. at ¶ 7.) In the supplemental SF-95, Plaintiffs wrote the following in Box 8 for the basis of the claim (Def. Ex. 3):

> Failure to diagnose and treat etopic (*sic*) pregnancy by Dr. Dominque Delma of the Institute for Family Health, Kingston, NY. Failure to prescribe Methotrexate, failure to respond to patient complaints of bleeding. Results in laparoscopy converted to a laparotomy, left partial salpingectomy and removal of large right adnexal cyst. Also results in ruptured falliopan (*sic*) tube. Ms. Currie now suffers from medically treated fertility issues, depression and significant surgical scarring.

Plaintiffs wrote the following in Box 10 for the description of the nature and extent of the injury:

> Failure to diagnose and treat etopic (*sic*) pregnancy, resulting in ruputered (*sic*) fallopian tube, surgical intervention, fertility issues which are being medically addressed, surgical scarring and depression. Claimant Andrew Currie has a loss of services claim.

(*Id.*) On May 5, 2023, Plaintiffs filed in this Court an Amended Complaint asserting four causes of action: (1) negligence claims for medical malpractice; negligent training, hiring, and supervision; and failure to promulgate and enforce proper procedures for prenatal care; (2) liability under the doctrine *re ipsa loquitor*; (3) prima facie tort; and (4) Mr. Currie's loss of services from Ms. Currie.[2] (*See* AC ¶¶ 23-42.) At the time of Plaintiffs' Amended Complaint, the administrative tort claim had not been accepted or denied by the Government. (*Id.* ¶ 9.) By letter dated June 26, 2023, HHS denied Plaintiffs' claim. (Def. Ex. 4.)

On July 19, 2023, Defendant sought leave to file a partial motion to dismiss Plaintiffs' claims for negligent hiring, negligent training, negligent supervision, and failure to promulgate and enforce proper procedures for prenatal care. (ECF No. 19.) With leave of the Court, the parties fully briefed the instant motion to dismiss on October 17, 2023.

---

[2] Plaintiffs electronically filed their Complaint and Amended Complaint on the same day. The Amended Complaint added Mr. Currie as a plaintiff and a fourth cause of action for Mr. Currie's loss of services from his wife Ms. Currie. (*See* ECF Nos. 10-11.)

3

**LEGAL STANDARDS**

  I.   **Federal Rule of Civil Procedure 12(b)(1)**

When a court lacks the statutory or constitutional power to adjudicate a case, it should dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1). *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

  II.  **Federal Rule of Civil Procedure 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable for the unlawful activity alleged. *Iqbal*, 556 U.S. at 678. "In considering a motion to dismiss for failure to state a claim, the district court is normally required to look only to the allegations on the face of the complaint . . . the court may [also] consider documents that are attached to the complaint, incorporated in it by reference, [or] integral to the complaint." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotation marks

omitted).

In assessing the sufficiency of the claims, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

## DISCUSSION

The Government seeks to dismiss Plaintiffs' claims for negligent training, negligent hiring, negligent supervision, and failure to promulgate and enforce proper procedures for prenatal care (the "Contested Claims"). The Government asserts two grounds for dismissal of the Contested Claims: (1) Plaintiffs failed to exhaust the appropriate administrative processes and (2) Plaintiffs fail to adequately plead these claims. The Government further argues that the negligent hiring, negligent training, and negligent supervision claims should also be dismissed because New York state law prohibits plaintiffs from asserting these causes of action against employers when the employee's actions were allegedly performed within the scope of employment.

For the reasons that follow, the Court dismisses Plaintiffs' claims for negligent hiring, supervision, and training for lack of jurisdiction under Rule 12(b)(1) and (2) Plaintiffs' claim for failure to promulgate and enforce proper prenatal procedures for lack of jurisdiction under Rule 12(b)(6).

### I. Exhaustion under the FTCA

The Government asserts that Plaintiffs failed to exhaust the Contested Claims because their SF-95 did not include a basis for any of the Contested Claims; did not provide sufficient

information for it to develop a reasonable understanding of the basis of the Contested Claims; did not provide sufficient information to enable the HHS to uncover the Contested Claims; and did not put it on notice of the Contested Claims. (ECF No. 24, "Def. Mem." at 5-6.) In response, Plaintiffs contend that an SF-95 need only meet the Government's investigatory needs and their SF-95 met these needs by providing the HHS with enough information to investigate all aspects of their claims. (ECF No. 27, "Pl. Opp." at 6.) Upon review of the controlling case law and the relevant legal precedent, the Court dismisses Plaintiffs' negligent training, hiring, and supervision claims for failure to satisfy the FTCA's presentment requirement. The Court finds, however, that Plaintiffs exhausted their failure to promulgate and enforce proper prenatal procedures claim and thus declines to dismiss that claim on this ground.

It is beyond cavil that the principle of sovereign immunity shields the United States from being sued without its consent and that "the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 564 U.S. 206, 212 (1983); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004). In the FTCA, Congress waived sovereign immunity for suits arising from injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [her] office or employment." 28 U.S.C. § 1346(b)(1). A suit against the United States is the exclusive remedy for a suit for damages for such injury or loss of property. 28 U.S.C. § 2679(b)(1). This waiver of sovereign immunity must be "strictly construed in favor of the government." *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988) (quotation and citation omitted).

"Before an action may be filed under the Federal Tort Claims Act, an administrative claim must be presented to the federal agency employing the person whose act or omission caused the injury." *Valdez v. United States*, No. 08-cv-4424, 2009 WL 2365549, at *5 n.7 (S.D.N.Y. July 31,

2009). "Presentation of an administrative claim to the appropriate agency is a jurisdictional prerequisite to suit." *Id*. (citing 28. U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by . . . mail.")). The agency has up to six months to respond to a claim, and if there is no response after six months, the claim can be assumed denied, and plaintiff can file an action in district court. *See* 28 U.S.C. § 2675(a); 28 C.F.R. § 543.32(1); *Bakowski v. Hunt,* 150 F. App'x 19, 21 (2d Cir. 2005); *Cuello v. Lindsay,* No. 09-cv-4525 (KAM) (MDG), 2011 WL 1134711, at *10 (E.D.N.Y. Mar. 25, 2011).

The administrative exhaustion requirement is "jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)). If the plaintiff fails to first present his claim to the appropriate agency and exhaust administrative remedies, then the plaintiff's tort claims must be dismissed. *Robinson*, 21 F.3d at 510 (citing *McNeil*, 508 U.S. at 113 (1993)); *Foster v. Fed. Emergency Mgmt. Agency*, 128 F. Supp. 3d 717, 728 (E.D.N.Y. 2015) ("Failure to comply with [exhaustion] results in dismissal of the suit."). The Second Circuit has held that merely filing an SF-95 does not necessarily satisfy the presentment requirement. *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) (per curiam). Instead, "[a]n FTCA claimant must provide the appropriate agency with sufficient notice of his claim to permit the agency to conduct an inquiry into the merits of his demand for compensation." *Collins v. United States*, 996 F.3d 102, 110 (2d Cir. 2021).

Both parties cite several cases in support of their arguments. Plaintiffs rely on *Johnson by Johnson*, 788 F.2d 845 (2d Cir. 1986) and *Rise v. United States*, 630 F.2d 1068 (5th Cir. 1908).

7

Both are clearly distinguishable. In *Rise*, plaintiff filed an administrative claim against the U.S. Army for negligence for failure "to diagnose and treat [plaintiff's wife] in December 1972 and January 1973" resulting in her death. *Rise*, 630 F.2d at 1070. Plaintiff later amended his complaint to allege "that the Army's referral of [the wife] to South Fulton Hospital and that its subsequent failure to supervise her treatment there were actionable negligence." *Id.* The district court granted plaintiff summary judgment on this ground and the government appealed the decision. The circuit court affirmed and concluded that "if the Government's investigation of Rise's claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." *Id.* The court reasoned that the administrative filing had included sufficient facts—including facts regarding the transfer itself— to give notice to the Army that its actions "were part of the chain of events that culminated in [plaintiff wife's] death." *Id.* The facts of this case are dissimilar. Here, Plaintiffs' SF-95 did not include facts touching on the training, supervision, or hiring of medical personnel at the Institute, or even the training, supervision, or hiring of Dr. Delma. Accordingly, the Court declines to apply the *Rise* decision here. *See also Natale v. United States*, No. 82 CIV. 8184-CSH, 1984 WL 1044, at *2-3 (S.D.N.Y. Oct. 17, 1984) (disagreeing with *Rise* and finding the government's investigation of plaintiff's medical negligence claim would not have "revealed or encompassed" a claim for negligent hiring, training, and supervision).

  The same is true of *Johnson by Johnson*. In that case, the Second Circuit held that an administrative claim stating the injury's cause, the name of the offending employee, and the date and location of the attack furnished the agency with sufficient facts "to enable it to investigate the matter." 788 F.2d at 849. The court noted that "[a]lthough the claim supplied no facts evidencing negligent supervision and did not allege all the factual elements of such a theory of liability, a

8

reasonably thorough investigation of the incident should have uncovered any pertinent information in the government's possession . . . ." *Id*. As Defendant notes, however, the facts underlying that claim—a negligence claim arising from a sexual assault by an employee—are distinguishable from those underlying this claim—negligence and medical malpractice arising out inadequate medical care and delayed treatment. (*See* Def. Mem. at 7.)

Other courts in this district have repeatedly held that an administrative filing alleging negligence in medical treatment does not afford the government sufficient information to investigate claims for negligent supervision, hiring, and training. *See McLean v. United States*, No. 20-CV-8189 (ALC), 2022 WL 976828, at *3 (S.D.N.Y. Mar. 31, 2022) (plaintiff's SF-95 that centered on failure to properly treat his urinary infection "did not provide sufficient information to permit the government to investigate any claims for negligent supervision, hiring, and training."); *Lassic v. United States*, No. 14-CV-9959 KBF, 2015 WL 5472946, at *4 (S.D.N.Y. Sept. 16, 2015), *aff'd*, 668 F. App'x 395 (2d Cir. 2016) (finding plaintiff could not assert a negligent hiring claim where the filing only alleges a failure to diagnose his condition); *Downs v. United States*, No. 506-CV-396 FJS/GHL, 2009 WL 2611226, at *3 (N.D.N.Y. Aug. 24, 2009) (dismissing plaintiff's claim for lack of subject matter jurisdiction because plaintiff's SF-95 alleged inadequate medical treatment and "[d]efendants' investigation would not have reasonably uncovered any pertinent information about [defendants'] hiring, training, or supervision practices with respect to its medical personnel."). As an analogous example, in *Martinez v. United States*, plaintiff's administrative claim asserted that the government had failed to "furnish Plaintiff with necessary and timely medical care." No. 20-CV-7275 (VEC), 2021 WL 4224955, at *14 (S.D.N.Y. Sept. 16, 2021). The court concluded that the investigation prompted by his administrative claim would not "inspire" the agency to investigate whether there was negligence in the hiring or

9

supervision the implicated employees, but instead the investigation "would begin and end with the care, or lack thereof, provided to plaintiff." *Id.* at *15. An investigation into the medical care provided to Ms. Currie would not necessarily uncover evidence of the training, hiring, and supervision policies of the Institute. The Court thus dismisses Plaintiffs' negligent hiring, supervision, and training claims for failure to exhaust. *Id.* Because the Court dismisses these claims on this ground, it declines to consider any other grounds for dismissal.

The Court does not reach the same conclusion with respect to Plaintiffs' failure to enforce and promulgate proper prenatal procedures claim, however. Plaintiffs' administrative claim states sufficient facts to put the Government on notice that Plaintiffs would seek compensation based on this theory of liability. Plaintiffs detail the allegedly inadequate treatment—Plaintiffs state that medical staff at the Institute failed to prescribe a specific medication, failed to respond to Ms. Currie's complaints of bleeding, and failed to diagnose her ectopic pregnancy. (*See* Def. Ex. 3.) Any investigation of Ms. Currie's treatment during her pregnancy would uncover evidence relating to whether medical personnel properly followed prenatal procedures. Therefore, the Court finds Plaintiffs properly satisfied the presentment requirement with respect to this claim. Accordingly, the Court will address whether Plaintiffs adequately plead a claim for failure to promulgate and enforce proper prenatal procedures.

## II. Failure to State a Claim under FRCP 12(b)(6)

Defendant argues that the Court should still dismiss Plaintiffs' negligence claim for failure to promulgate and enforce proper prenatal procedures because the Amended Complaint lacks any well-pleaded factual allegations to support it. (Def. Mem. at 9.) The Court agrees.[3]

---

[3] Plaintiffs also argue that the pleading standards under New York state law apply. This is incorrect. In federal court, although the substantive laws may vary, the same Rule 8(a) pleading standard applies to a plaintiff's state and local law claims as to her federal claims. *See, e.g., Novak v. JPMorgan Chase Bank, N.A.*, 518 Fed. App'x 498, 501 (8th Cir.2013) ("We apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if

10

Plaintiffs allege "Defendant, through its deemed entities . . . was further negligent, reckless, and careless and deviated from the accepted standards of care . . . in failing to properly promulgate and/or enforce proper procedures for pre-natal care." (AC ¶ 24.) Accordingly, Plaintiffs' claim appears to sound in both negligence and medical malpractice. Under New York law, "there is no prohibition against simultaneously pleading both an ordinary negligence cause of action and one sounding in medical malpractice." *Jones v. Beth Israel Hosp.*, No. 1:17-CV-3445-GHW, 2018 WL 1779344, at *9 (S.D.N.Y. Apr. 12, 2018) (citing New York state law cases). "It is simply beyond cavil that an action for personal injuries may be maintained, in the proper case, on the dual theories of medical malpractice or simple negligence where a person is under the care and control of a medical practitioner or a medical facility." *Id.* (citing *Ingutti v. Rochester Gen. Hosp.*, 44 N.Y.S.3d 274, 275-76 (4th Dep't 2016)) (internal quotation marks omitted).

Regardless, Plaintiffs fail to plead either negligence or medical malpractice under this theory. Beyond conclusory statements, Plaintiffs do not allege any facts relating to the prenatal policies or procedures at the Institute. The Court therefore dismisses this claim for failure to state a claim upon which relief can be granted. *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) ("[T]hreadbare recitals of the elements of a cause of action and conclusory statements . . . do not suffice to state a claim.") (citing *Iqbal*, 129 S. Ct. at 1949) (internal quotation marks omitted).

### III.   Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to

---

a complaint makes out a claim under state law.") (citing *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir.2013)).

amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment of an FTCA claim is futile when a plaintiff fails to exhaust his administrative remedies. *See Dockery v. Tucker*, No. 97-cv-3584 (ARR), 2007 WL 5303009, at *17 (E.D.N.Y. Dec. 5, 2007) *report and recommendation adopted in part*, No. 97-cv-3584 (ARR) (RLM), 2008 WL 2673307 (E.D.N.Y. June 26, 2008); *see also Funches v. Reish*, No. 97-cv-7611 (LBS), 1998 WL 695904, at *9–10 (S.D.N.Y. Oct. 5, 1998) (limiting plaintiff's leave to amend his complaint to only that claim that was set forth in plaintiff's Administrative Tort Claim). Because Plaintiffs failed to exhaust their administrative remedies with respect to their negligent training, negligent supervision, and negligent hiring claims, the Court denies Plaintiffs leave to amend with respect to these claims.

However, because Plaintiffs' Amended Complaint was the first pleading for which motion practice occurred, the Court grants Plaintiffs leave to amend their pleadings to assert additional facts in support of their negligence and/or medical malpractice claim based on failure to promulgate and/or enforce proper prenatal procedures.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Court dismisses Plaintiffs' (1) negligent training, negligent hiring, and negligent supervision claims with prejudice and (2) failure to promulgate and enforce proper procedures for prenatal care claim without prejudice.

Plaintiffs are granted leave to file a Second Amended Complaint on or before June 10, 2024. Plaintiffs are advised that the Second Amended Complaint will replace, not supplement, their Amended Complaint, and so any claims that they wish to pursue must be included in, or attached to, the Second Amended Complaint. Plaintiffs may not assert claims for negligent training, negligent hiring, or negligent supervision in their Second Amended Complaint.

Should Plaintiffs not file a Second Amended Complaint by June 10, 2024, Plaintiffs' claim dismissed without prejudice will be dismissed with prejudice and Defendant is directed to file an answer to the remaining claims in Plaintiffs' Amended Complaint on or before July 1, 2024. In the event Plaintiffs file a Second Amended Complaint on or before June 10, 2024, Defendant is directed to answer, or otherwise respond to, the Second Amended Complaint on or before July 1, 2024.

The Court respectfully directs the Clerk to terminate the motions at ECF No. 23.

Dated:   May 14, 2024                                                  SO ORDERED:
           White Plains, New York

                                                                         NELSON S. ROMÁN
                                                                          United States District Judge